MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Sonia R. and Kenneth S. who are the biological parents of the minor children Kenneth R. and Jeremy S. The case also presents a petition for the termination of parental rights of Sonia R. and Thomas K., father of Sarah R. Finally the case presents a petition for the termination of the parental rights of Sonia R. and Alex M. who are the biological parents of the minor child Alex M. CT Page 2204
Kenneth R is presently 12 years old, Jeremy S. is 11 years old, Sarah R. is 7 years old and Alex M. is 4 years old. The two older boys are placed together in the same foster home and the foster mother wishes to adopt these two children if the parents' rights are terminated. Sarah and Alex are placed together at a different foster home. This foster mother is not interested at this time in adopting these children. DCF's plan is to have the two younger children placed together in an adoptive home if the parents' rights are terminated.
The court finds that the mother Sonia R. has failed to appear for trial. The mother had been served, had counsel appointed and had notice of pendency of this case. Accordingly the court finds that the mother has defaulted in her attendance at trial.
With regard to the father Thomas K., who is the father of Sarah R., the court makes a finding that this father has failed to appear for trial. The father has been served, appeared in these proceedings and had counsel appointed. The court finds that he had actual notice of the pendency of the case and has defaulted in his attendance at trial.
The court finds that the putative father, Alex M.'s whereabouts are unknown despite diligent efforts to locate him. On September 30, 1998, a diligent search affidavit was filed by the guardian appointed by the court to search for this father. Despite the measures outlined in the affidavit all efforts at locating Alex M. have been unsuccessful. The court finds that this father was served by publication and that he defaulted in his attendance at trial.
Kenneth S. appeared at trial, represented by counsel, to contest the petition seeking termination of his parental rights.
The court has jurisdiction in this matter. There is no pending action regarding custody of the children in any other court and reasonable efforts have been made to reunify this family.
The court having taken judicial notice of three psychological evaluations dated August 7, 1997, August 11, 1997 and August 11, 1997, having read the various documents entered into evidence and heard the testimony of one social worker, a licensed therapist and Kenneth S., makes the following findings by clear and CT Page 2205 convincing evidence.
 I. Background
While in the care of their mother, the children were subjected to serious and ongoing pervsasive neglect. The children witnessed severe drug and alcohol abuse by their mother, were beaten by their grandmother, resided in filthy conditions, missed school on a regular basis, and were not provided with even the basic necessities like a bed.
On April 11, 1996, neglect petitions and orders of temporary custody were filed with regard to the four children. On July 24, 1996 commitment of all four children was granted and the children were found to have been neglected. An extension of commitment was filed on June 13, 1997. An extension was granted on July 24, 1997. An extension of commitment was filed on May 26, 1998 and on June 24, 1998, the court continued the extension of commitment until October 1, 1998. On October 1, 1998 the commitment was extended through July 17, 1999.
In October, 1996, the following court expectations were provided to the mother: (1) to keep her whereabouts known to DCF, to keep all appointments set by DCF and her attorney (2) to visit her children as often as DCF permits (3) to participate in counseling relating to parenting (4) to have a psychological evaluation on mother and children as well as interactions between the mother and four children (5) to secure and maintain adequate housing and income (6) no substance abuse (7) no involvement with the criminal justice system (8) to follow all recommendations of a psychological evaluation and investigate employment opportunities. The biological fathers were not provided with expectations as their whereabouts were unknown at the time.
The Mother
Sonia R. has not completed a substance abuse rehabilitation program. On July 27, 1996, she completed Guenster's inpatient program, but never followed through with outpatient completion. In November of 1996, she admitted to relapsing and using cocaine and alcohol. She attended Project Courage sporadically after her relapse. She resumed her attendance on May 12, 1997, at Project Courage, however, she failed to complete this program. On September 22, 1997, Sonia R. began her fourth substance abuse program. However, her attendance has been sporadic. CT Page 2206
Sonia R. was given the opportunity to visit Kenneth and Jeremy bi-weekly in 1996, however, her visitation was sporadic and inconsistent. She was also given the opportunity to visit with these children in their foster home. Since their placement up until the termination papers were filed, she has only visited their home a total of five times. In addition her telephone contact has been minimal.
With regard to the two younger children Sarah and Alex, the mother has visited the children a total of four times at their home since she was given permission to do so on September 24, 1997. Her telephone contact has been sporadic and inconsistent. While she has been allowed weekly visits, she has rarely requested them.
The Father — Kenneth S.
Kenneth S. has a lengthy criminal history His criminal record includes the following convictions:
• March 31, 1983, criminal trespass
 • July 16, 1983 second degree criminal mischief, sixth degree larceny, violation of probation
• August 5, 1984, possession of marijuana
 • August 13, 1984, second degree larceny, third degree burglary
• August 6, 1985, second degree forgery
• August 29, 1986, two counts of failure to appear
• August 6, 1987, four counts of sale of marijuana
• August 6, 1987, failure to appear in court
 • October 6, 1988, assault on police officer, failure to appear
• June 5, 1989, third degree larceny
• July 9, 1989, second degree larceny, assault on an CT Page 2207 officer
• December, 1989, second degree burglary
• August 3, 1989, third degree burglary
• August 22, 1989, first degree larceny
• May 5, 1992, third degree larceny
 • July 2, 1993, two counts of third degree burglary, probation violation
• January 13, 1994, criminal mischief
• October 17, 1994, third degree burglary
• November 1, 1994, third degree burglary
• November 3, 1994, first degree larceny
 • January 18, 1995, third degree larceny, third degree burglary
Between 1983 and 1994 the father was in and out of jail. In 1994 he was given a ten year sentence. According to undisputed testimony at trial, he has served four years of this sentence and is scheduled to serve six more years. He is eligible to apply for parole approximately one year from now.
When the original neglect petitions were filed, attempts to contact Kenneth S. were made via publication. The Cheshire Correctional facility was contacted as to his whereabouts in May, 1996. However DCF did not have a date of birth and the search was fruitless. Attempts were also made to locate Kenneth S. through the Department of Social Services and the State of Connecticut Correctional Facilities.
DCF did not become aware of Mr. S's whereabouts until April of 1998. Kenneth S. did not attempt to have any contact with the children while he was incarcerated between 1994 and 1998. It was not until January of 1998, when Kenneth S. Jr. wrote his father to wish him a happy birthday, that the father attempted to write back. However, the father did not learn until April of 1998 that the children had been removed from the mother's care since 1996 CT Page 2208 and that they were in the custody of DCF. After learning this, this father attempted to send approximately ten letters to Kenneth and Jeremy at the address of the foster parent.
 ADJUDICATION
With respect to the statutory grounds for termination of parental rights the court finds by clear and convincing evidence that these children were previously found to have been neglected on July 24, 1996 (Melville, J.). The children have been abandoned by all of their biological parents in the sense that the parents have failed to maintain a reasonable degree of interest, concern, or responsibility, as to the welfare of their children C.G.S.17a-112 (c)(3)(A). Even sporadic and inconsistent efforts, like those of Sonia R., support a finding of abandonment. In reMigdalia M, 6 Conn. App. 194, 210 (1986).
The court further that the mother Sonia R. and the biologlcal fathers have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, they could assume a responsible position in the life of the children. C.G.S. Section 17a-112 (c)(3)(A). In order to evaluate the likelihood of parental rehabilitation the court should consider whether the parent by his own actions has caused the destruction of the family. In re Juvenile Appeal(84-6).2 Conn. App. 705, 711-712 (1984). Kenneth S. has a sixteen year history of being convicted for engaging in criminal behavior. This history, in addition to the remaining six years on his sentence, leads the court to a finding that Kenneth S. has failed to achieve such degree of personal rehabilitation that he can assume a responsible position in the childrens' lives within a reasonable time.
The court also makes a finding by clear and convincing evidence with regard to all of the biological parents that there's been no ongoing parent/child relationship that ordinarily develops as a result of a parent having met on a day to day basis, the physical, emotional, moral and educational needs of the children and to allow further time for the establishment or re-establishment of such a parent/child relationship would be detrimental to the best interests of the children.
The court finds that these grounds have existed for more than one year. CT Page 2209
 MANDATORY FINDINGS
With respect to the mandatory factual findings required by Conn. Gen. Stat. Section 17a-112 (e), except in the case where the termination is based on consent;
(1) The timely nature and extent of services offered to Sonia R.
The court finds that nature and counseling services were offered, vistitation was offered and foster care was provided by DCF. With regard to Kenneth S., his whereabouts were unknown until April of 1998 after the children had been in foster care for two years. He has not maintained regular contact with his children nor provided for any of their emotional, physical, educational, financial or moral needs, since being incarcerated in 1994. He has only served four years of a ten year sentence. While he is eligible for parole in one year, and is hopeful that he may be released at that time, there was no evidence presented that he will actually be released on that date. It is possible that he may have to serve the full ten year term. With regard to Thomas K. and Alex M., fathers of Sarah and Alex, neither father has maintained any form of contact with these children.
(2) Finding whether DCF has made reasonable efforts to reunite the family pursuant to the Federal Adoption Assistance and Child Welfare Act, 1980.
The mother had more than enough time to demonstrate her desire and concern for reunification and to achieve rehabilitation. None of the fathers demonstrated any concern in parenting or made themselves available for the delivery of unification services, with the exception of Kenneth S. whose whereabouts did not become known to the Department until April of 1998, two years after the children had been placed in foster care.
(3) Findings regarding the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
The court finds that the mother Sonia R. did not fulfill or comply with the expectations. CT Page 2210
(4) Findings regarding the feelings and emotional ties of the child with respect to their parents, any guardians, any person who has exercised physical care, custody or control of the child for at least one year and with whom the children have developed significant emotional ties.
The court finds that Kenneth R. and Jeremy S. are each bonded to their present foster family, and that no presently existing emotional bonds will be broken by termination of the parents' rights. With regard to Sarah and Alex, the court finds that no presently existing emotional bonds will be broken by termination of the parents' rights.
5) Age of Children:
Kenneth R. entered DCF foster care at the age of 9 years, 6 months. He is currently 12 years old.. Jeremy S. entered DCF foster care at the age of 8 years, 3 months. He is currently 10 years old. Sarah K entered DCF foster care at the age of 4 years, 5 months. She is currently 7 years old. Alex M. entered DCF foster care at the age of 1 year, 10 months. He is currently 4 years old.
(6) The efforts of the parents to adjust their circumstance or conditions to make it in the best interest of the children to return them to their home in the foreseeable future, including but not limited to (a) the parent has maintained contact with the children (b) contacts with the guardian or other custodians.
The court finds that the parents have been unsuccessful in making any meaningful and sustained attempt to adjust their circumstances, conduct or condition to facilitate reunification. With regard to Kenneth S., this father did not have any contact with the children until 1998 when his son sent him a birthday card. The farther has not provided any love or affection, concern for the health, education and well being of his children, and has not provided a home, social or religious guidance for his children.
While the father testified credibly that he does not want to lose his children, the court believes that the childrens' need for permanency and stability in their lives far outweighs the father's desire to become re-involved in the children's lives if he is released from prison on parole. The father readily admits that to ask the children to wait the six remaining years of his CT Page 2211 sentence before re-establishing contact is far too long to ask the children to wait. Morever, the court believes that the father's voluntary choices have resulted in his being incarcerated for a lengthy period of time. The children should not be made to suffer any longer for the unfortunate choices that their father made. They need and deserve the permanency that will occur if their biological parents' parental rights are terminated and they are adopted by their current foster mother. With regard to Thomas K., this father has not had any contact with his daughter Sarah. With regard to Alex M., this father has not had any personal interaction with his son Alex.
(7) Finding the extent to which a parent has been prevented from maintaining a meaningful relationship with the children by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any person or by the economic circumstances of the parent.
The Department of Children and Families has never prevented the mother from visiting with her children however her visitation has been sporadic. The court finds that there has been nothing to prevent the parents from maintaining a meaningful relationship with the children and that there was no unreasonable conduct by DCF.
With regard to Kenneth S., DCF did make diligent efforts to locate him. It was not until a letter was sent by the son to the father to wish him a happy birthday in January of 1998 that the father attempted to have any contact with his child. While Kenneth S. did attempt to send several letters to the children that may or may have not actually been given to the children in 1998. he did not initiate any contact with the children prior to 1998. He has been incarcerated since 1994 and is serving a 10 year sentence because of the choice he made to engage in illegal conduct.
 DISPOSITION
Based upon the foregoing findings, the court determines that it is in the childrens' best interest for a termination of parental rights to enter with respect to the mother Sonia R. and the male biological parents and accordingly a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF be appointed statutory parent for these children for the purpose of securing adoptive homes. If the CT Page 2212 foster parents are willing to adopt, it is the court's direction that they receive first consideration. The Commissioner shall file with this court no later than 90 days following the date of judgement a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
ROGERS. J.